**UNITED STATES of America, Appellee,**

v.

**Vincent John RAO, Appellant.**

**No. 382, Docket 32068.**

United States Court of Appeals Second Circuit.

Argued April 3, 1968.

Decided May 9, 1968.

connection with testimony given under a grant of immunity before a Federal Grand Jury. After seven days of trial, the case was submitted to the jury on November 16, 1967 at 3:00 P.M. At approximately 10:00 P.M. the jury sent out a note stating: "We the jury cannot reach a unanimous decision—ratio of nine to three on all counts." The jury were discharged for the night and told to come back at 10:00 A.M. for further deliberations. At approximately 11:30 A.M. the next day, the jury stated that they were still deadlocked. At this point the trial court gave the jury a supplemental charge known as the *Allen* charge based on Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). At 3:30 P.M. the jury was brought in and asked whether it had reached a verdict on some or all of the counts. The jury responded that while still deadlocked on Counts 1, 2 and 3, it had found the defendant guilty on Count 5.[1]

### The *Allen* Charge

Rao objects generally to the giving of a supplemental charge to a deadlocked jury which stresses the desirability of their arriving at a unanimous verdict one way or the other because he believes that such an instruction has a disproportionate effect upon minority jurors standing for acquittal. Despite the possibility of this occurring in some cases, the *Allen* charge has been upheld many times.[2] The considerable costs in money and time to both sides if a retrial is necessary certainly justify an instruction to the jury that if it is possible for them to reach a unanimous verdict without any juror yielding a conscientious conviction which he or she may have, they should do so.

Peter R. Taft, Williams, Wadden & Stein, Washington, D. C. (Thomas A. Wadden, Jr., Washington, D. C., of counsel), for appellant.

Andrew M. Lawler, Jr., Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, New York City, John E. Sprizzo, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before MOORE, WOODBURY * and SMITH, Circuit Judges.

MOORE, Circuit Judge:

Vincent John Rao, defendant-appellant, was tried on four counts of perjury in

---

\* Of the First Circuit, sitting by designation.

1. Count 4, dealing with appellant's attendance at a meeting in Apalachin in 1957, was severed by the trial court to avoid prejudice to the appellant.

2. See United States v. Bilotti, 380 F.2d 649, 654 (2d Cir.), cert. denied, 389 U.S. 944, 88 S.Ct. 308, 19 L.Ed.2d 300 (1967); United States v. Kenner, 354 F.2d 780 (2d Cir. 1965), cert. denied, 383 U.S. 958, 86 S.Ct. 1223, 16 L.Ed.2d 301 (1966); United States v. Kahaner, 317 F.2d 459, cert. denied sub nom. Corallo v. United States, 375 U.S. 835, 84 S.Ct. 62, 11 L.Ed.2d 65 (1963). See generally, Mathes, Jury Instructions and Forms for Federal Criminal Cases, 27 F.R.D. 39, 102 (1960).

Rao also argues that since the jury had revealed its numerical split, such a charge should not have been given, relying for support on Brasfield v. United States, 272 U.S. 448, 47 S.Ct. 135, 71 L. Ed. 345 (1926), which held that it is reversible error for a trial judge to inquire of a deadlocked jury how it stands divided. See also United States v. Samuel Dunkel & Co., 173 F.2d 506, 510–511 (2d Cir. 1949) (error to give *Allen* charge after inquiry as to whether there was "a pronounced majority"). However, the jury in this case volunteered the extent of their division and there is no reason why such unsolicited information should preclude the court from giving an otherwise proper *Allen* charge. See Bowen v. United States, 153 F.2d 747 (8th Cir.) cert. denied, 328 U.S. 835, 66 S.Ct. 980, 90 L.Ed. 1611 (1946). Furthermore, the jury did not reveal whether the majority were for acquittal or conviction, and after revealing their division they deliberated for approximately one and one-half hours during which time the situation might have altered. Thus, the judge's charge could not have been interpreted by the jury as indicating any preference for either side, the vice thought to inhere in the giving of an *Allen* charge after a question to the jury as to their division. Compare United States v. Rogers, 289 F.2d 433 (4th Cir. 1961); United States v. Samuel Dunkel & Co., supra.

Rao also argues that the instruction given by the court was unduly coercive because it went beyond the language approved in *Allen* and other cases cited above. Specifically, appellant argues that the following statement is by itself reversible error:

> "I do not mean to say or to suggest or intimate that, if after doing that [*deliberating some more*], a juror is absolutely convinced that the majority is wrong, that he or she has not the right to abide by his or her own judgment."

Appellant argues that a minority juror could draw the inference from this statement that he should be "absolutely convinced that the majority is wrong" before abiding by his own convictions. However, the context in which that statement was given dispels any doubt that a juror might have been misled. In the preceding sentences, the jury had been told that:

> "Of course, in the end every juror must answer to his or her conscience, that is, to do what he or she thinks is right, but every juryman must make an honest endeavor to see the point of view of the other men and women on the jury; to keep his or her mind absolutely open and not to get into an obstinate state of mind. You should attempt, as far as you honestly can, to give the most careful thought to what a majority of your colleagues on the jury believe to be the solution."

And in conclusion, the judge stated:

> "I want to repeat that it is not my desire to coerce any juror to decide the case against his or her best judgment. I do not intimate in the slightest that a juror should abandon his personal conviction * * *."

Viewed as a whole, the instruction was not coercive.

### Sufficiency of the Evidence

Finally, appellant attacks the sufficiency of the evidence to convict him of perjury. The count on which he was convicted related to his testimony on the extent of his contacts with a certain restaurant. The Grand Jury was seeking to ascertain if he had any disclosed or undisclosed interests in it. When asked how often he was at the restaurant in the preceding two weeks, he replied: "Look, don't pinpoint me on this. I'm not going to let you—I was there periodically. I was there maybe four or five times. I can't answer you just in days." In fact, appellant had been at the restaurant on every evening but one. He also claimed that he only ate there and that he was usually accompanied by his wife. In fact, he was never observed eating there and he was almost always unaccompanied. The jury could therefore prop-

erly conclude that by characterizing his presence at the restaurant as periodical when it was actually continual, he deliberately perjured himself.

Affirmed.