**UNITED STATES ex rel. Ernest BARBRY**

v.

**Alfred T. RUNDLE, Supt.**

**Misc. No. 69–380.**

United States District Court
E. D. Pennsylvania.

Jan. 22, 1970.

Geoffrey A. Wilson, for petitioner.

Joseph J. Musto, Asst. Dist. Atty., for respondent.

## OPINION

HIGGINBOTHAM, District Judge.

Relator's petition for writ of habeas corpus is bottomed on two legal arguments, which he contends entitle him to a new trial on bill 824 of December Sessions, 1965, Court of Quarter Sessions, Philadelphia County. Relator was first tried on indictment No. 824, charging rape, and lesser included offenses, in April of 1966, and a mistrial resulted when the jury could not reach a verdict. The Commonwealth renewed its prosecution before a second jury in September of 1966.

At both trials, the prosecutrix testified that relator forced her at knifepoint to a vacant house and there sexually assaulted her. In his own defense, relator acknowledged that he had had intercourse with the prosecutrix, but claimed that this resulted from her solicitation, and was consummated with her consent.

The Commonwealth's second prosecution was successful, and relator was found guilty on all counts of the bill of indictment—but not before there occurred two legal actions which relator finds so prejudicial as to entitle him to a new trial.[1]

Relator's two legal contentions were presented before me during oral argument on November 5, 1969. Both parties subsequently submitted briefs in support of their positions.

■ Relator's first contention raises for my consideration a version of the so-called "Allen Charge," which one Judge has referred to as the "dynamite" charge[2] and which derives from the case

of Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

At the conclusion of relator's second trial the jury retired to deliberate and returned after four hours and thirty-five minutes—not having agreed upon a verdict. At that point Judge Bernard J. Kelley instructed the jury as follows: (N.T., pp. C 47–C 48)

"Members of the jury, I am going to send you back because I believe that this case should require more deliberation and discussion. It is eminently desirable that if you can reasonably agree, that you do agree upon a verdict.

"For the parties involved, that is the Commonwealth and the defense, this trial is an important one, and the presentation of this case to you has involved expense not only to the Commonwealth but also to the defendant.

"If you fail to agree upon a verdict, the case will have to be tried before another jury selected in the same manner and from the same source as you were chosen. There is no reason to believe that the case will ever be submitted to a jury more competent than you members of the jury to decide it.

"Of course, by pointing out to you the desirability of your reaching a verdict the Court is not suggesting to any of you that you surrender conscientious convictions of what the truth is and of the weight and effect of all of the evidence.

"The Court does, however, call to your attention that in most cases absolute certainty cannot be expected and that while each of you must decide the case for yourself and not merely acquiesce in the conclusion of your fellow jurors, you should examine the questions submitted to you in

---

1. It should be noted that relator has properly exhausted his state remedies. After winning the right to file post-trial motions *nunc pro tunc*, relator raised and lost the points now and before me through appeal to the Superior Court, Commonwealth v. Barbry, 213 Pa.Super. 252, 249

A.2d 357 (1968; with one dissent), and the Supreme Court of Pennsylvania (allocatur denied No. 479–A, Misc. Docket No. 16, Feb. 20, 1969).

2. Green v. United States, 309 F.2d 852, 853 (CCA 5, 1962, Judge Wisdom.)

the jury room with candor and frankness and with proper deference to and regard for the opinions of each other.

"It is your duty after full deliberation and consideration of all the evidence to agree upon a verdict if you can do so without violating your individual judgment and your conscience.

"With those remarks, I send you back for further deliberation."

Two hours and twenty-five minutes later the jury returned with a verdict of guilty on all counts.

Our own United States Court of Appeals for the Third Circuit has recently dealt with "Allen Charge" problems in two opinions, and it is in the teachings of those two opinions that the answer to relator's contention lies. In United States of America v. Fioravanti et al., 412 F.2d 407 (CCA 3, 1969) the Court concluded that the use of the "Allen Charge" there "was not so prejudicial as to deprive appellant of a fair trial and a unanimous verdict based on proof beyond a reasonable doubt." At the same time, the Court made the following prospective ruling as to trials in the federal court:

"Hereafter, in this circuit, trial judges are not to give instructions either in the main body of the charge or in the form of a supplement that direct a juror to distrust his own judgment if he finds a large majority of the jurors taking a view different from his. Such an instruction will be deemed error, normally reversible error. Conceivably, in very extraordinary circumstances the error may be found so inconsequential as to avoid the necessity of reversal on appeal. But hereafter this court will not let a verdict stand which may have been influenced in any way by an *Allen* Charge."

A little more than one month after *Fioravanti*, the United States Court of Appeals for the Third Circuit handed down an opinion in United States of America ex rel. Herbert Brothers v. Rundle, 414 F.2d 244 (CCA 3, 1969) and stated:

"In view of the recent opinion concerning the so-called Allen charge in United States v. Fioravanti et al., 412 F.2d 407 (3d Cir., 1969), it is noted that (1) the "prohibition" in that opinion applies to charges given after June 16, 1969, in *federal* court trials in this Circuit and (2) that opinion specifically states (p. 419): 'We do not re-examine the constitutional question * * *.'" (Emphasis added.)

The Court found "no constitutionally unwarranted infringement on the function of the jury." *Herbert Brothers* is determinative here, for it is indistinguishable in law from the present case.

Relator's counsel argues that the charge at issue here goes beyond other versions of the Allen Charge and is the more prejudicial because "the jury was told that there was a duty to agree and was informed of the great expense which would be incurred if a case had to be retried."

The jury was in fact told it had a duty to agree, but only "if you can do so without violating your individual judgment and your conscience." As for the matter of expense, Judge Kelley made the following reserved and even-handed statement: "The presentation of this case to you has involved expense not only to the Commonwealth but also to the defendant." I find this statement to be of no prejudicial import. Again it is my considered judgment that this case is indistinguishable at law from *Herbert Brothers*. Relator's first legal argument is thus unavailing.

█ Relator also prays this Court to grant him a new trial, claiming he was prejudiced when the trial judge allowed the jury to be informed that relator had been convicted and imprisoned for a prior crime, but did not allow the defense to explain the offense. At trial the Deputy Clerk, Quarter Sessions Court, Alfred Hoskin, testified about re-

lator's prior conviction, as follows: (N.T. pp. 727–729)

"A. Defendant was found guilty on 10/18/61 of burglary, larceny, receiving stolen—"

"Q. Wait a minute. He was found guilty of larceny; is that correct?

"A. Yes, first count.

"Q. What is the sentence?

"A. Defendant is committed to State Correctional Institute at Camp Hill, Pennsylvania. It is signed by Judge Griffith from the 47th District, specially presiding."

Relator's trial counsel questioned Mr. Hoskin about the prior indictment on cross-examination:

"Q. It showed he was stealing a record player?

"A. Sir?

"Q. Does it show that he was charged with stealing a record player?"

At this point the District Attorney's objection was sustained, and Judge Kelley ruled against relator's trial attorney's suggestion that relator could take the stand to explain the felony. The Judge also would not allow the Bill of Indictment from the previous case to be marked as a defendant's exhibit.

Relator does not contend that it was constitutionally impermissible for the Commonwealth to have sought to impeach his credibility by introducing proof of a prior felony conviction. Rather, he argues that he should have been allowed to explain the nature of the prior offense to the jury.

As the notes of testimony reproduced, supra, reveal, relator's counsel did on two occasions ask if relator's prior conviction was for "stealing a record player." The questions were disallowed by Judge Kelley and were never answered. Were these legal rulings so prejudicial to relator as to amount to a violation of his constitutional rights and entitle him to a new trial?

In his charge to the jury, Judge Kelley stated: (N.T., pp. C 29–C 30)

"The fact that a witness has been convicted of a felony, if such be the fact, may be considered by you for only one purpose; namely, in judging the credibility, the believability, of that witness. The fact of such a conviction does not necessarily destroy or impair the witness' credibility, and it does not raise a presumption that the witness has testified falsely. It is simply one of the circumstances that you are to take into consideration in weighing the testimony of such a witness."

It is nowhere alleged that Judge Kelley's rulings and charge to the jury on the introduction of evidence of a prior conviction to impeach the credibility of a witness do not comport with the law of the Commonwealth of Pennsylvania. The Judge's rulings and charge are in fact the law of Pennsylvania. As recently stated by the Supreme Court of Pennsylvania:

"Where a defendant takes the witness stand in his own defense he is the same as any other witness and his credibility is in issue. The Commonwealth, therefore, may introduce evidence of his prior criminal record of conviction of felonies * * * for the purpose of affecting his credibility." (Citations omitted.) Commonwealth ex rel. Sprangle v. Maroney, 423 Pa. 589, 225 A.2d 236 (1967).

I believe that Spencer v. State of Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed. 2d 606 (1967) and one of its progeny in our own circuit, United States ex rel. Bolish v. Maroney, 409 F.2d 1404 (CCA 3, 1969) constrain me to rule against relator's second legal contention. Spencer upheld the constitutionality of the Texas procedure for enforcing its recidivist statutes. The State was permitted to allege prior offenses in indicting defendants and to introduce proof of past convictions with an appropriate charge to be given by the Texas Courts. Spencer teaches that the Supreme Court of the United States is not "a rule-making or-

gan for the promulgation of state rules of criminal procedure" (87 S.Ct. at 654). And again that to be so "would be a wholly unjustifiable encroachment by this Court upon the constitutional power of States to promulgate their own rules of evidence to try their own state-created crimes in their own state courts, so long as their rules are not prohibited by any provision of the United States Constitution, which these rules are not." (87 S.Ct. at 656.)

In United States ex rel. Bolish v. Maroney, *supra*, the United States Court of Appeals for the Third Circuit found it "clear that no matter how many prior convictions are involved, their recitation to the jury is immaterial as long as the jury is charged that this evidence is to be considered only with respect to the penalty imposed in the event that the jury finds the defendant is guilty of the crime with which he is charged."

Since this Court is decidedly not "a rule-making organ for the promulgation of state rules of criminal procedure" and since I find no violation of any constitutional provision inhering in the present Pennsylvania practice, I must rule against relator's second legal contention.

Because I find both of relator's legal arguments to be unavailing, I shall deny his petition for writ of habeas corpus.

Accordingly the writ will be denied.

There is no probable cause for appeal.

IT IS SO ORDERED.

When there has been a final disposition of the matter, the Clerk of this Court is directed to return to the Clerk of the Court of Quarter Sessions, Philadelphia County, all records and transcripts in the State proceedings against relator which were received and docketed in this Court.

Thus, if no appeals are timely taken, the records and transcripts will be forwarded after termination of appeal time; if appeals are taken, the records will be returned after the matter has been ultimately adjudicated within the federal court system.